JAMES W. TUFTS v. L. S. HUNTER.[1]

January 21, 1896.

Nos. 9722—(237).

**Sale—Rescission by Buyer.**

*Held*, it conclusively appears from the evidence that the personal property delivered was not of the character ordered on an executory agreement to purchase, and the defendant was for this reason justified in rescinding the contract.

**Same—Waiver.**

Within a reasonable time after receiving the property, the vendee notified the vendor of the defects in it, and that he would refuse to accept it unless these defects were remedied at once. *Held*, he did not thereby deprive himself of the right to rescind if the defects were not remedied within a reasonable time thereafter.

[1] Reported in 65 N. W. 922.

Written Contract—Parol Evidence.

*Held*, the written order for the purchase of the goods was too indefinite as to the identity of the property sold to constitute in that respect a complete written contract, which could not be varied by parol.

Appeal by plaintiff from an order of the district court for Watonwan county, Severance, J., denying a motion for a new trial. Affirmed.

*J. W. Seager* and *W. S. Hammond*, for appellant.
*Lorin Cray*, for respondent.

CANTY, J. On March 1, 1892, at St. James, Minnesota, defendant delivered to plaintiff a written order, by the terms of which defendant agreed to purchase of plaintiff a certain soda-water apparatus. "Meridian No. 5723, Star marble, second-hand"; "2 10-gal. Cop. Fountains"; "to be shipped Apr. 15"; price, $310; $60 cash, and balance in instalments,—for which defendant agreed to execute a promissory note, title not to pass until paid for. This is about all of the contents of the order that it is necessary to state. A second-hand soda-water apparatus was shipped by plaintiff to defendant about April 16, a part of it from Boston, Massachusetts, and a part of it from Minneapolis. It arrived at St. James April 28 or 30, was taken to defendant's drug store, and examined, when defendant discovered that the fountains were only of the capacity of eight gallons each, and could not be connected with the rest of the apparatus, as the connections were never made to fit each other at all. Plaintiff had agreed to reline the fountains with tin, and this had not been done, but the fountains were rusty and corroded on the inside. Thereupon, on May 2, defendant wrote as follows to plaintiff's agent at Minneapolis, with whom he had negotiated the purchase: "I have a kick to enter on founts: First, they are not 10 gallons; second, they have not been relined, as per agreement; third, they do not fit the attachments sent with the fountain. What have you to offer? I * * * want this matter straightened out at once. I ask a satisfactory and substantial answer." Receiving no answer to this letter, on May 9 he wrote to plaintiff, at Boston, as follows: "Fountain and founts have arrived. I decline to accept same, and give as reason a copy of letter to your 'special' at Minneapolis, Minn. A week has brought no answer. He is the party I dealt with, and

thought it would expedite matters to write him at once in regard to founts. These goods are here subject to your order, unless they are satisfactory and complete in every particular. P. S. An immediate answer must follow." With this letter was sent a copy of the letter of May 2. Receiving no answer, defendant again, on May 21, wrote to plaintiff, at Boston, as follows: "I wrote you May 9th; also inclosed copy of letter to your 'special' of May 2nd. I have heard nothing from either of these communications. Soda apparatus is here subject to your order. I will await your disposal of them a reasonable length of time, and then dispose of them according to law, charging you in the meantime storage, freight, and what other charges there may accrue." On May 18 plaintiff wrote from Boston to defendant, at St. James, as follows: "Yours of the 2nd and 9th inst. are at hand. Mr. Favor has not for some time been in St. Paul, as he has been transferred to another field. To remove your complaint, I shall send you two 10-gallon fountains from Boston." The last-named fountains arrived at St. James by rail on June 2, but defendant refused to receive or accept them, and wrote plaintiff on May 31 that he would not accept them, and has never made any use of any of the soda-water apparatus which had originally been delivered to him, but has always held it at plaintiff's disposal.

This action was brought by plaintiff to recover as damages the amount of the purchase price, for defendant's alleged breach of the contract in failing to pay the instalments due, and execute his notes for the others, as provided in said order. On the trial all the foregoing facts appeared in evidence, and were wholly uncontradicted. The court ordered a verdict for defendant, and from an order denying his motion for a new trial plaintiff appeals.

We are of the opinion that the order appealed from should be affirmed. Appellant concedes that defendant, not having received the kind of fountains ordered by him, was under no obligation to accept them, but claims that instead of rescinding at once, and offering to return the property, he demanded that the defects be remedied, and that, when plaintiff acted on this demand, defendant refused to receive the new fountains, and repudiated the contract. Conceding that defendant's letters of May 2 and 9 indicate an intention on his part to accept the soda-water apparatus if the defects were remedied promptly, it sufficiently appears that these defects

were not remedied promptly.    His letters do not indicate an intention on his part to wait until freight shipped from Boston nine days after his second letter arrived at St. James.    He waited until May 31, when he rescinded the contract, and was not thereafter bound to accept the new fountains, which did not arrive until June 2.    It appears by the evidence that "the soda-water business generally starts in April, and·is in full blast in May."    We are of the opinion that, under the circumstances, defendant did not waive his right to rescind by his letters of May 2 and 9, unless these letters were acted on promptly by plaintiff, which, from all the circumstances, it clearly and indisputably appears he did not do.

The allegations of the answer are sufficient to admit proof of all of the foregoing facts.

There was nothing in the written order to the effect that plaintiff agreed to reline the copper fountain, and it is contended by appellant that the evidence received to prove a contemporaneous oral agreement so to reline the fountains was incompetent, as varying the terms of a written agreement.    We cannot so hold.    Defendant never saw either of the two fountains afterwards delivered to him, and the order does not identify any two particular copper fountains.    Any two 10-gallon copper fountains in the country, old or new, of any grade, make, type, or kind whatever, in existence or not in existence, would have answered the description in the order. Then, in this respect, the written order cannot be considered a complete written contract.    It is altogether too indefinite for that. The parol evidence did not contradict the written contract, and was not inconsistent with its terms, and was competent.    See Browne, Parol Ev. 4, 9, and 126.

None of appellant's exceptions to the admissions of evidence are well taken.

This disposes of the case, and the order appealed from is affirmed.