## Roy N. L. Brown *vs*. Levi G. Durepo.

### Aroostook.    Opinion March 29, 1922.

*A wife in order to be entitled to the credit of her husband even for necessaries must be*
*justified in leaving a home the husband provided for her.    Yet in obtaining goods*
*if she does not exercise that right, but obtains them on her own credit, the*
*husband is not liable.    If husband and wife are living apart through*
*some fault of the husband, there is a presumption in case of neces-*
*saries that she pledged the husband's credit, and not her own,*
*unless the husband has otherwise made reasonable pro-*
*visions for her support, even though the goods be*
*charged to her, unless by her express direction.*

In order to take with her the credit of her husband even for "necessaries" the wife must be justified in leaving the home the husband provided for her.

Not only must she take with her the right, but in case of obtaining credit, she must exercise that right.    If it was her intent to obtain the goods on her own credit, it will not render the husband liable.

Where husband and wife are living apart through some fault of the husband, the presumption is in case of "necessaries," unless it be shown that the husband has otherwise made reasonable provisions for her support, that she has pledged the husband's credit, and not her own; and even though the goods be charged to her, unless by her express direction, still the husband will be liable and she, not.

Where, however, husband and wife are living apart even though through the fault of the husband, but the wife in the purchase of "necessaries" on credit expressly directs that the goods be charged to herself and pays money on account, and the tradesman not only charges them to her on his books, but admits that he gave the credit to her and not to the husband, the presumption that they were bought on the husband's credit is overcome and no recovery can be had of the husband.

On motion by defendant for a new trial.    This is an action upon an account annexed to recover for merchandise sold and delivered by the plaintiff to the defendant's wife.    The defendant, at the age of nineteen years, was married July 17, 1918, and his wife was seventeen years of age.    A few days after his marriage the defendant with his

wife went to live with his aunt, his father being dead.   In September following he enlisted in the service of the United States and on leaving home to enter upon such service he made arrangements for his wife to remain at his aunt's home with the understanding that she was to have a home there and receive for assisting in the housework, her board, clothing and five dollars per week in cash.   About a week after the husband left home his wife left his aunt's home and went to live with her sister in Caribou.   The merchandise included in the account annexed was purchased by defendant's wife of plaintiff after she went to live with her sister.   Plaintiff contended that the circumstances were such as to justify the wife in leaving the home which her husband had provided for her at his aunt's home, and defendant contended that she was not justified in leaving such home, and furthermore claimed that he was not liable for the reason that the goods were sold and delivered upon the credit of the wife.   The case was tried to a jury and a verdict of sixty-eight dollars and eighty-four cents was returned for plaintiff, and defendant filed a general motion for a new trial.   Motion sustained.

The case is fully stated in the opinion.

*O. L. Keyes,* for plaintiff.

*Powers & Guild,* for defendant.

SITTING:   CORNISH, C. J., SPEAR, HANSON, MORRILL, WILSON, JJ.

WILSON, J.   An action of assumpsit to recover for certain merchandise consisting of wearing apparel and material therefor delivered by the plaintiff to the defendant's wife.   The jury found for the plaintiff, and the case comes before this court on the defendant's motion for a new trial on the usual grounds.

The defendant was married in July, 1918, and two weeks thereafter went with his wife to live with his aunt with whom he and his orphaned brother and sister had made their home prior to his marriage.

The defendant became of draft age and subject to the draft of 1918 and by arrangement with the proper officials he enlisted and was transferred to the Students Army Training Corps at Tufts College. He left home to take up this work September 13th, 1918, leaving his wife at his aunt's with the understanding that she was to remain there and have a home and receive for assisting in the housework her board, clothing and the sum of five dollars per week.   Later she

received from the government the regular allotment for her husband's pay, viz.: fifteen dollars per month.

At the end of a week after his departure, dissatisfied, as she says, with her treatment, but without notifying her husband, she left the aunt's and went to her sister's home in another town to live. The first of the goods sued for in this action were purchased by her within a few days after leaving the home her husband had provided.

The jury under instructions of the court to which no exceptions were taken must have found that the defendant's wife was warranted in leaving the home he had provided for her during his absence. Otherwise she would not take with her the right to pledge his credit even for necessaries. *Steinfield* v. *Girrard*, 103 Maine, 151. The jury must also have found that it was her intent when she purchased the goods to obtain them on his credit and not on her own.

We have grave doubts as to whether there is sufficient evidence in favor of the plaintiff on the first point on which the verdict may rest. The period during which this liability was incurred was one requiring great personal sacrifices not only by the husbands who were called to service, but by the wives who were left at home. The defendant's wife when she married knew his financial condition and his family relations and that his country might at any time demand his services, in which case the amount she would receive from his pay would be small. The arrangements for her support made by the husband when he left appear to have been suitable and adequate.

The seemingly slight differences between her and the aunt, and the slurs and insults, which may have been more imagined than real and born of a desire on her part to be free of the restraint she felt in the new home and under the new responsibilities, were, even if her testimony be taken at its full value, insufficient we think to justify her leaving the home the husband had provided without notifying him. But even if a verdict founded upon the testimony on this branch of the case were not so manifestly wrong as to justify this court in interfering, and she must be held to have taken with her the right to pledge her husband's credit, it is clear from her testimony and that of the plaintiff that she did not undertake to exercise that right when she purchased the goods sued for, but purchased them on her own credit, which under the statutes of this State she had a right to do. *Yates* v. *Lurvey*, 65 Maine, 221; R. S., Chap. 66, Sec. 4.

It is true that at common law the wife, while living with the husband, in purchasing of tradesmen in the ordinary course for family use is presumed to be acting as the agent of her husband, and even though the tradesman charged the goods so purchased to her, it would not render her liable or relieve her husband of liability. *Emmett* v. *Norton*, 8 Car & P., 506; *Furlong* v. *Hysom*, 35 Maine, 332; *Baker* v. *Carter*, 83 Maine, 132. And even where they are living apart through some fault of the husband, the presumption still is in the case of the purchase on credit of "necessaries," unless it be shown that the husband has otherwise made reasonable provisions for her support, that she has pledged the husband's credit and not her own, and even though the goods be charged to her, unless by her express direction, still the husband would be liable and she, not. *Beaudette* v. *Martin*, 113 Maine, 310.

There must, however, be the intent on her part at the time of the purchase to pledge the husband's credit. If arising merely from the presumption by reason of their marital relations, it, of course, may be overcome. The statutes of this state long since have permitted her to contract and purchase upon her own credit, and whenever it appears she has done so, she, and not the husband, is liable. Williston on Contracts, Vol. 1, Sec. 270, Page 520; *Hirshfield* v. *Waldron*, 83 Mich., 116; *In re DeSpelders Est.*, 181 Mich., 153; *Hill* v. *Goodrich*, 46 N. H., 41; *Caldwell* v. *Blanchard*, 191 Mass., 489.

In the case at bar the plaintiff not only charged the goods to the wife on his books, though this may not be controlling, *Beaudette* v. *Martin*, supra, but he frankly admits he gave the credit to her. The wife on her part does not pretend that at the time of purchase she disclosed or had any intention of pledging her husband's credit, on the contrary she admits that she directed them to be charged to herself and at the time paid a sum on account thereof. There is not the slightest evidence that she then considered herself the agent of her husband and was purchasing "necessaries" on his account, but on the contrary the evidence clearly establishes, we think, that she purchased on her own credit.

Why she afterward instructed the plaintiff to look to her husband does not clearly appear, though from the evidence it, perhaps, may be fairly inferred that in the meantime some friction had arisen over her leaving the aunt's and going to live with her sister, due in part at least, to alleged attentions paid to her by a brother of her sister's husband.

We think the jury clearly erred in finding upon the evidence that the goods sued for were purchased on the credit of the husband. The motion must therefore be sustained.

Entry will be:

*Motion sustained.*